UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK

ONLINE PUBLICATION ONLY

TRINA D. TAYLOR,

                         Plaintiff,

        - versus -

NEW YORK CITY DEPARTMENT OF EDUCATION, JOHN QUATTROCCHI, FRANK FARINO, MAUREEN ABERNETHY, DONNA ESTRO, and GAYLE HOLMES,

                        Defendants.

MEMORANDUM AND ORDER  
11-CV-3582

A P P E A R A N C E S :

       LAW OFFICES OF J.R. HAIRSTON, P.C.  
            243-18 Merrick Boulevard  
            Rosedale, NY 11422  
    By:     Joylette R. Hairston  
            *Attorney for Plaintiff*

       MICHAEL A. CARDOZO  
            Corporation Counsel of the City of New York  
            100 Church Street, Room 2-141  
            New York, NY 10007  
    By:     Amy J. Kessler  
            *Attorney for Defendants New York City Department of Education, Maureen Abernethy, Donna Estro, and Gayle Holmes*

       PELTZ & WALKER  
            222 Broadway, 25th Floor  
            New York, NY 10038  
    By:     Alexander Peltz  
            *Attorney for Defendant Frank Farino*

       LAW OFFICE OF RICHARD E. SIGNORELLI  
            799 Broadway, Suite 539  
            New York, NY 10003  
    By:     Richard E. Signorelli  
            *Attorney for Defendant John Quattrocchi*

JOHN GLEESON, United States District Judge:

Trina D. Taylor brings this action against her employer, the New York City Department of Education ("DOE"), as well as against the individual supervisors at her school. The DOE and assistant principals Maureen Abernethy, Donna Estro, and Gayle Holmes (collectively, the "City Defendants"), move to dismiss Taylor's complaint on the ground that it fails to state a claim. Frank Farino and John Quattrocchi have each filed separate motions to dismiss the complaint, in which they adopt the City Defendants' arguments in full. For the reasons explained below, the motions are granted, and Taylor's complaint is hereby dismissed. However, Taylor is granted leave of 30 days to amend her complaint to the extent set forth below.

BACKGROUND

A. *Factual Allegations*

Taylor's complaint sets forth the following factual allegations, which I must accept as true for purposes of deciding these motions. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

Taylor is an African-American teacher employed by DOE. Compl. ¶¶ 1, 10, 26. She currently teaches at school PS 43 MS ("PS 43"), which is located at 160 Beach 29th Street, Far Rockaway, New York. *Id.* ¶¶ 6, 10, 26. She began her employment with DOE in 1994, when she began teaching kindergarten through sixth grade at PS 150 in Brooklyn. *Id.* ¶ 11. After spending approximately four years at PS 150, Taylor worked at PS 327, also in Brooklyn, for another seven years, teaching the same grades. *Id.* ¶ 12. During those combined 11 years of teaching, Taylor had an excellent employee record and never received an unsatisfactory "U"

annual rating. *Id.* ¶ 13. An unsatisfactory "U" rating in two consecutive school terms is a ground for dismissal from employment from DOE. *Id.* ¶ 22.

Taylor transferred to PS 43 in June 2005, when her family moved to Far Rockaway. *Id.* ¶ 14. Quattrocchi was the principal at PS 43 when Taylor arrived, and he remained the principal until September 2010. *Id.* ¶¶ 14-15. Farino, Abernethy, Estro, and Holmes are all assistant principals at PS 43, and have been throughout the duration of Taylor's employment there. *Id.* ¶¶ 6-9.

Although Taylor has a Masters degree in teaching reading,[1] since 2007 she has been assigned to teach Science and Social Studies classes without first being supplied with the appropriate educational tools and preparation materials. *Id.* ¶ 17. By contrast, the defendants supplied similarly situated Caucasian teachers with the requisite teaching aids without hesitation. *Id.*

In 2007, Taylor complained to her union that Quattrocchi and Farino imposed unequal terms and conditions of employment on Taylor and other African-American teachers at PS 43, that Quattrocchi and Farino showed preferential treatment to Caucasian teachers at PS 43, and that Taylor had observed Quattrocchi and Farino pressure African-American teachers to leave PS 43 and/or to resign. *Id.* ¶ 18. Taylor has not alleged that she herself was ever pressured to leave or resign.

On or about May 24, 2007, Quattrocchi placed a negative letter in Taylor's employment file. The letter alleged that Taylor's actions during an incident in class were deemed corporal punishment. *Id.* ¶ 20.

---

[1] The complaint states that Taylor has a Masters degree in English. However, Taylor's counsel represents in her opposition brief that, in fact, Taylor's Masters degree is in teaching reading, not English. *See* Pl.'s Opp. Mem. at 6 n.2.

At the end of the 2007 school year,[2] Taylor received her first unsatisfactory "U" annual rating, which Quattrocchi issued based not on his own personal observations of Taylor's work in the classroom but on information supplied to Quattrocchi by Holmes. *Id.* ¶ 19. At the end of the 2009 school year, Quattrocchi threatened to convert Taylor's satisfactory "S" rating into an unsatisfactory "U" rating unless she attended an optional workshop that summer. *Id.* ¶ 21. At the end of the 2010 school year, Taylor received an unsatisfactory "U" rating. *Id.* ¶ 24. She has been threatened and warned by defendants to expect another unsatisfactory "U" rating at the end of the 2011 school year. *Id.* ¶ 24.

In June of 2010, Quattrocchi and/or Farino and/or Abernethy and/or Estro yelled at Taylor and told her that she "just did not fit in as a teacher at PS 43 MS." *Id.* ¶ 23.

Tired of the "hostile work environment" at PS 43, Taylor sought a teaching position at PS 14 on Staten Island in September 2010. *Id.* ¶ 25. Although Taylor believed she was a "sure in" for the position, she was denied the position after Quattrocchi said damaging things about her to the principal at PS 14. *Id.*

Quattrocchi was removed from PS 43 in September 2010,[3] but assistant principals Farino and Abernethy continue to harass and disparage Taylor on account of her race. *Id.* ¶ 26.

Taylor filed a charge with the New York State Division of Human Rights ("SDHR") on August 26, 2010. *Id.* ¶ 28. She filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 8, 2010. *Id.* ¶ 29. On April 27, 2011, the EEOC issued Taylor a right-to-sue letter. *Id.* ¶ 30.

---

[2] Taylor's complaint does not specify whether "the 2007 school year" is meant to denote the school year that began or ended in 2007. When asked at oral argument, Taylor's counsel stated that the phrase refers to the year in which the school year began. Thus, "the 2007 school year" means the school year that began in the fall of 2007 and ended in the spring of 2008.

[3] Quattrocchi was replaced as principal by Gary Fairweather, who is African-American. Compl. ¶ 26.

B.   *Procedural History*

Taylor filed the complaint in this case on July 26, 2011. Compl. (ECF No. 1). Although Taylor's complaint does not specify the nature of her claims aside from alleging that they arise under Title VII, her opposition papers suggest that she purports to raise three distinct claims under Title VII: (1) race discrimination; (2) retaliation; and (3) hostile work environment. Farino filed an answer to Taylor's complaint on February 8, 2012. *See* Farino Ans. (ECF No. 7).

The City Defendants (that is, the DOE, Abernethy, Estro, and Holmes) filed a motion to dismiss Taylor's complaint on February 28, 2012. *See* DOE Mo. To Dismiss (ECF No. 14); *see also* DOE Mem. in Support (ECF No. 15). On the same day, Farino and Quattrocchi filed individual motions to dismiss in which they adopted the arguments of the City Defendants in whole. *See* Farino Mo. To Dismiss (ECF No. 16);[4] Quattrocchi Mo. To Dismiss (ECF No. 17). I heard oral argument on the motions on April 20, 2012.

DISCUSSION

A.   *The Standard of Review*

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, a court need not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

---

[4]   The court granted Farino permission to file this motion to dismiss, in spite of his already filing an answer to the complaint. *See* Electronic Order dated 2/15/12 (granting ECF No. 12).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a party does not "nudge[] [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

B.  *The Claims Against the Individual Defendants*

"[I]ndividuals are not subject to liability under Title VII." *Sassaman v. Gamache*, 566 F.3d 307, 315-16 (2d Cir. 2009) (quoting, *inter alia*, *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

John Quattrocchi, Frank Farino, Maureen Abernethy, Donna Estro, and Gayle Holmes are all individual supervisors of Taylor. Because such persons do not face personal liability under Title VII (the only law Taylor purports to bring a claim under), all claims against these individuals are hereby dismissed.

C.  *The Claims Against the New York City Department of Education*

1.  *The Timeliness of Taylor's Claims*

Before filing a Title VII claim, a plaintiff must first exhaust his or her administrative remedies by timely filing of a charge of discrimination with the EEOC or an equivalent state or city agency. 42 U.S.C. § 2000e–5(e); *see also Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (holding that exhaustion of administrative remedies is an "essential" precondition to bringing a Title VII claim in federal court, although not a jurisdictional requirement). To be timely, the plaintiff's administrative complaint must have

been filed within 300 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e–5(e)(1).[5]
"Thus, only events that occurred during the 300-day period prior to filing [the EEOC charge] . . . are actionable under Title VII." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

The City Defendants argue that all of Taylor's claims that accrued prior to October 30, 2009, are time-barred, because they occurred more than 300 days before she filed her complaint with the SDHR on August 26, 2010. *See* DOE Mem. at 4-5. In particular, the City Defendants argue that the following claims must be dismissed for failure to file a timely administrative complaint: that Taylor was not provided appropriate materials to teach Science and Social Studies in 2007; that she received a negative letter in her employment file on May 24, 2007; that she received a "U" rating for the 2007 school year; and that at the end of the 2009 school year, Quattrocchi threatened to change her "S" rating to a "U" rating if she did not attend a summer workshop.[6] *Id.* at 4-5.

Taylor argues that these older claims are not time-barred by 42 U.S.C. § 2000e–5(e)(1), because they fall within the so-called "continuing violation" exception to the 300-day limitations period. "The continuing violation exception applies when there is evidence of an

---

[5] An individual who initially files a grievance with the state or local agency must file her charge within 300 days "after the alleged unlawful employment practice occurred," or within 30 days after receiving notice that the state or local agency has terminated the proceeding, whichever is earlier. 42 U.S.C. § 2000e-5(e)(l). Where no state or local antidiscrimination agency is available and the individual's charge is filed solely with the EEOC, it must be filed within 180 days after the alleged unlawful employment practice occurred. *Id.*

[6] The City Defendants appear to have misunderstood the plaintiff's labeling method for school years. Thus, the complaint alleges that Taylor received her first unsatisfactory "U" rating at the end of the 2007 school year. Compl. ¶ 19. The City Defendants read that allegation to mean that Taylor received her "U" rating in the spring of 2007 for the 2006-2007 school year. *See* DOE Mem. at 4 (arguing for dismissal of any "claims relating to plaintiff's annual 'U' rating for the 2006-2007 school year"). However, according to the clarification made by plaintiff's counsel at oral argument, the 2007 school year refers to the 2007-2008 school year, not the 2006-2007 school year. Similarly, the complaint alleges that "at the end of the 2009 school year," Quattrocchi threatened to convert Taylor's "S" rating to a "U" rating. Compl. ¶ 21. The City Defendants interpreted this allegation to mean that Quattrocchi threatened to change Taylor's rating for the 2008-2009 school year. *See* DOE Mem. at 5. However, given the plaintiff's clarification, the allegation seems to refer to the rating for the 2009-2010 school year instead. Because the threat therefore would have occurred in the spring of 2010, it would not be time-barred.

7

ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests." *Van Zant*, 80 F.3d at 713. "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Id.* The continuing violation theory requires "the existence of a discriminatory policy or mechanism" to apply. *Lukasiewicz-Kruk v. Greenpoint YMCA*, 404 F. App'x 519, 520 (2d Cir. 2010). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1336 (2011); *accord Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."). However, "[a]lthough discrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation, 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice,' a continuing violation may be found[.]" *Van Zant*, 80 F.3d at 713 (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)) (internal citation omitted).

The allegedly discriminatory policy or mechanism that Taylor relies on is the defendants' "employment practice of issuing satisfactory or unsatisfactory ratings to teachers at the end of each school year . . . by Assistant Principals and Principals, who have the freedom of being random, bias [sic], disparaging, and subjective with the issuance and justifications for

8

these ratings." Pl.'s Opp. Mem. at 9 (ECF No. 22-1). Taylor also suggests that defendants "had an ongoing employment practice of imposing unequal terms and conditions upon Plaintiff and other African-American teachers at PS/MS 43 in contrast to their Caucasian co-workers, of showing preferential treatment to the Caucasian teachers at the school, and of pressuring African-American teachers at PS/MS 43 to leave and/or resign from teaching at the school." *Id.*

The latter of these so-called "policies" identified by Taylor is nothing more than a conclusory assertion of discriminatory conduct. In order to overcome the 300-day limitations requirement, the discriminatory policy alleged must be more than simply an assertion that the defendant had a policy of violating Title VII. Rather, Taylor must point to a specific policy of her employer – such as a biased seniority system or employment test – or to specific, related incidents of discrimination that the employer left unremedied, to allege a continuing violation.

The only plausible policy that Taylor has identified is the DOE's allegedly baseless annual review system, in which school principals and assistant principals enjoy allegedly unbridled discretion to brand an employee with an unsatisfactory "U" rating without being required to substantiate their review with classroom observations or other work performance evaluations. Even assuming that such a policy might foster discrimination in a specific and ongoing way so as to support a finding of a continuing violation, I find that the complaint does not plausibly allege that such an arbitrary review system existed. Accordingly, all claims made by Taylor that accrued prior to October 30, 2009, must be dismissed as time-barred. These include her claims that she was deprived of appropriate teaching materials for teaching Science and Social Studies classes starting in 2007, Compl. ¶ 17; any claims relating to her union complaint in 2007, *id.* ¶18; her claims relating to a negative letter that was placed in

her employment file on May 24, 2007, *id.* ¶ 20; and her claim that she received an unsatisfactory "U" rating at the end of the 2007 school year, *id.* ¶ 19.[7]

2. *The Sufficiency of the Timely Allegations*

Taylor's timely claims are as follows: Quattrocchi threatened to convert Taylor's rating for the 2009-2010 school year from a satisfactory "S" rating to an unsatisfactory "U" rating if Taylor did not attend an optional workshop over that summer, *id.* ¶ 21; she received an unsatisfactory "U" rating at the end of the 2010-2011 school year, *id.* ¶ 24; the defendants have threatened and warned Taylor that she should expect to receive an unsatisfactory "U" rating at the end of the 2011-2012 school year, *id.*; around June 2010, Quattrocchi and/or Farino and/or Abernethy and/or Estro yelled at Taylor and told her that she "just did not fit in as a teacher at PS 43 MS," *id.* ¶ 23; PS 43 was a hostile work environment for Taylor, *id.* ¶ 25; and she was denied a transfer to a teaching position at PS 14 in September 2010 as a result of Quattrocchi's damaging statements about her, *id.*

a. *Discrimination*

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(l). To establish a claim for discrimination under Title VII, a plaintiff must demonstrate that: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Although a plaintiff need not plead all the facts necessary to establish a *prima facie* case, she

---

[7] Taylor's claim that Quattrocchi threatened to convert her satisfactory "S" rating into an unsatisfactory "U" rating at the end of the 2009 school year is not time-barred, however, because the threat appears to have occurred in the spring of 2010 – within the 300-day period.

10

must satisfy Rule 8 by making "a short and plain statement . . . showing that the pleader is entitled to relief" under the governing legal framework. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511-12 (2002) (quoting Fed. R. Civ. P. 8(a)(2)).

The Second Circuit defines an adverse employment action as a "'materially adverse change' in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Terry*, 336 F.3d at 138). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Terry*, 336 F.3d at 138 (internal quotation marks and alterations omitted).

The only alleged incidents that could potentially qualify as adverse employment actions are: (1) the negative annual performance evaluations at the end of the 2007-2008 and 2010-2011 school years; and (2) the denial of Taylor's request to transfer to PS 14 in September 2010. *See, e.g.*, *Lawrence v. Mehlman*, 389 F. App'x 54, 56 (2d Cir. 2010) ("Reprimands or negative evaluation letters may, in some circumstances, constitute adverse employment action, . . . and whether they do is typically a question of fact for the jury." (citations omitted)); *Sanders*, 361 F.3d at 756 (acknowledging that "a negative job evaluation may constitute adverse employment action in certain circumstances"); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) ("[A] forced transfer, or denial of a transfer, may amount to an adverse employment action when, for example, an employee is forced to move to or to stay in a unit with

more cumbersome job responsibilities or lower compensation.").[8] But none of Taylor's allegations raises even a plausible inference that those employment actions were the result of racial discrimination. The complaint is devoid of detail regarding the negative performance evaluations, such as what they were based on, what reasons she was told justified the negative reviews, why those reasons were wrong or unfair, and so forth. Nor does it provide any information regarding why Taylor was a shoo-in for the position at PS 14, or whether the PS 14 position would have offered her materially different terms and conditions of employment, such as more money, prestige, or authority. The complaint similarly lacks any allegations regarding the treatment of similarly situated Caucasian teachers. In sum, the complaint does not raise Taylor's right to relief on the basis of race discrimination "above the speculative level." *Twombly*, 550 U.S. at 555.

Because Taylor may be able to remedy this defect by providing more factual detail, she is granted leave to replead with respect to her claims of discrimination arising from her negative performance evaluations for the 2007-2008 and 2010-2011 school years and her denied transfer request in September 2010.

---

[8] By contrast, Taylor's supervisors' yelling at her on a single occasion in June 2010 does not qualify as an adverse employment action. *See, e.g.*, *Teachout v. N.Y.C. Dep't of Educ.*, 2006 WL 452022, at *13 (S.D.N.Y. Feb. 22, 2006) ("Negative comments . . . are not, standing alone, adverse employment actions, because mere comments do not materially affect employment."); *Brennan v. City of White Plains*, 67 F. Supp. 2d 362, 374 (S.D.N.Y. 1999) (holding that yelling once and telling plaintiff another time that she had "made it miserable here" was not an adverse employment action). Nor do the alleged unfulfilled threats to give Taylor negative performance evaluations for the 2009-2010 and 2011-2012 school years qualify as adverse employment actions. *See, e.g.*, *Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) ("[C]ourts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation."); *Stembridge v. City of N.Y*, 88 F. Supp. 2d 276, 283 (S.D.N.Y. 2000) (no actionable harm where "reprimand contained a warning that repetition of improper behavior could result in disciplinary action but contained no indication of any planned discipline or further action"); *Castro v. N.Y.C. Bd. of Educ. Pers.*, No. 96 Civ. 6314 (MBM), 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) ("[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.").

b.  *Retaliation*

Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'" *Terry*, 336 F.3d at 140-41 (quoting *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)). "To establish a prima facie case of retaliation, an employee must show '[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.'" *Id.* at 141 (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). Taylor engaged in protected activity when she complained to her union about racial discrimination in the workplace in 2007. She also engaged in protected activity when she filed her administrative charges in August and September 2010 and when she filed the instant lawsuit in July 2011. Accordingly, DOE was prohibited from taking any employment action disadvantaging Taylor as a result of these activities.

"[T]he standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims under Title VII." *Vaughn v. City of N.Y.*, No. 06-CV-6547 (ILG), 2010 WL 2076926, at *14 (E.D.N.Y. May 24, 2010). Retaliatory treatment can be any "adverse treatment that is based on a retaliatory motive and is

13

reasonably likely to deter the charging party or others from engaging in protected activity." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006) (quoting *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000)). Thus, "[u]nlike the discrimination provision of Title VII, which applies only to adverse actions affecting the terms and conditions of employment, the retaliation provision applies to actions 'likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers.'" *Vaughn*, 2010 WL 2076926, at *14 (quoting *Burlington Northern*, 548 U.S. at 68).

Two incidents alleged in Taylor's complaint could plausibly qualify as adverse employment actions taken in retaliation for her filing a union grievance in 2007: Quattrocchi's threat to convert Taylor's performance rating for the 2009-2010 school year from satisfactory to unsatisfactory, Compl. ¶ 21; and the June 2010 incident in which a supervisor yelled at Taylor that she just did not fit in as a teacher at PS 43, *id.* ¶ 23.[9] Two additional incidents may qualify as retaliation for Taylor's August and September 2010 administrative complaints of discrimination: her negative 2010-2011 year-end performance evaluation; and the denial of her request to transfer to PS 14 in September 2010.

Thus, Taylor's amended complaint may include retaliation claims for these four incidents. However, Taylor is admonished to provide greater detail supporting an inference of retaliation in her amended complaint if she wishes to protect these claims against further attack.

c.  *Hostile Work Environment*

Title VII also prohibits "a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To establish a claim for hostile work environment, the plaintiff must demonstrate that "the workplace is permeated with

---

[9] Other incidents that might otherwise have plausibly constituted retaliation for Taylor's 2007 union grievance are all time-barred: the May 24, 2007, letter regarding corporal punishment; the 2007 denial of teaching supplies for Science and Social Studies class; and the 2007-2008 year-end performance evaluation.

14

discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id.* (quotations omitted). The conduct must be both objectively and subjectively hostile. *Id.*; *Terry*, 336 F.3d at 148.

"'Hostile work environment' claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Curtis v. DiMaio*, 46 F. Supp. 2d 206, 213-14 (E.D.N.Y. 1999). "Title VII . . . does not set forth a general civility code for the American workplace." *Burlington Northern*, 548 U.S. at 68 (internal quotation marks omitted). "Thus, to qualify as sufficiently hostile or offensive for a claim under Title VII, an employer's conduct must be . . . severely abusive or disparaging toward the plaintiff." *Ennis v. Sonitrol Mgmt. Corp.*, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Terry*, 336 F.3d at 148 (internal quotation marks omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris*, 510 U.S. at 21.

The only events alleged in Taylor's complaint that arguably support a hostile work environment claim are: (1) the June 2010 incident in which a supervisor yelled at Taylor that she just did not fit in as a teacher at PS 43, Compl. ¶ 23; (2) the denial of Taylor's request to transfer to PS 14 in September 2010, *id.* ¶ 25; and (3) the negative performance evaluations Taylor received at the end of the 2007-2008 and 2010-2011 school years, *id.* ¶¶ 19, 24.

These allegations are clearly insufficient to state a plausible claim that Taylor's workplace was so "permeated with discriminatory intimidation, ridicule, and insult" so as to alter the conditions of Taylor's employment. *See Harris*, 510 U.S. at 21. Accordingly, Taylor may

15

not include any claim for hostile work environment in her amended complaint unless she alleges additional facts and incidents that plausibly support such a claim.

## CONCLUSION

Taylor's complaint is too bare to assert a claim under Title VII. Accordingly, she is given 30 days' leave to replead with greater factual allegations to support her claims. Taylor's amended complaint must be filed within 30 days of the date of this order. Taylor may not include in her amended complaint claims that have been dismissed as time-barred or claims brought against individual defendants, which are hereby dismissed with prejudice. All further proceedings shall be stayed for 30 days to allow Taylor the opportunity to comply with this order.

So ordered.


John Gleeson, U.S.D.J.


Dated: August 2, 2012
      Brooklyn, New York