UNITED STATES DISTRICT COURT                    ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

TRINA D. TAYLOR,
                                                MEMORANDUM
                              Plaintiff,        AND ORDER
                                                11-CV-3582
            - versus -


NEW YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendant.


APPEARANCES :

            LAW OFFICES OF J.R. HAIRSTON, P.C.
                  243-18 Merrick Boulevard
                  Rosedale, NY 11422
            By:   Joylette R. Hairston
                  *Attorney for Plaintiff*

            MICHAEL A. CARDOZO
                  Corporation Counsel of the City of New York
                  100 Church Street, Room 2-141
                  New York, NY 10007
            By:   Ashley Hale
                  *Attorney for Defendant*


JOHN GLEESON, United States District Judge:

            Trina D. Taylor commenced this action against her employer, the New York City

Department of Education ("DOE"), under Title VII of the Civil Rights Act, 42 U.S.C. § 2003 *et

seq*.  Taylor alleges that the DOE violated Title VII by discriminating against her on the basis of

her race and retaliating against her for filing a union grievance and administrative complaints.

The DOE moves to dismiss Taylor's amended complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure ("Fed.R.Civ.P.") for failure to state a claim.  I heard oral argument on

November 20, 2012.  For the reasons stated below, the DOE's motion to dismiss is granted.

BACKGROUND

A.      *Factual Allegations*

        Taylor's amended complaint sets forth the following factual allegations, which I

accept as true for purposes of deciding this motion.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir.

2009).

        Taylor is an African-American teacher employed by the DOE.  Am. Comp. ¶ 3.

She currently teaches at PS 43 MS ("PS 43"), which is located at 160 Beach 29th Street, Far

Rockaway, New York.  *Id* ¶¶ 3-4.  She began her employment with the DOE in 1994, teaching

kindergarten through sixth grade at PS 150 in Brooklyn.  *Id*. ¶ 10.  After approximately four

years at PS 150, Taylor transferred to PS 327, also in Brooklyn, teaching the same grades for

another seven years.  *Id*. ¶¶ 10-11.  During these combined 11 years of teaching, Taylor had an

excellent employee record and never received an annual rating of unsatisfactory ("U").  *Id*. ¶ 12.

A "U" rating in two consecutive school years is grounds for dismissal from employment from

the DOE.  *Id*. ¶ 25.  Taylor transferred to PS 43 in June 2005, when her family moved to Far

Rockaway.  *Id*. ¶ 13.

        In 2007 Taylor filed a complaint of racial discrimination in the workplace with

her union.[1]  *Id*. ¶¶ 1, 23.  Since filing that complaint, Taylor has vocalized her opposition to what

she believes to be racially discriminatory practices and policies at PS 43.  *Id*.

        Taylor received her first "U" rating at the end of the 2007-08 school year.  *Id*. ¶

24.  She received a satisfactory ("S") rating at the end of the 2008-09 school year.  *Id*.  But on

June 26, 2009, then-Principal John Quattrocchi[2] threatened to convert her "S" rating into a "U"

_____

[1]        The amended complaint does not specify the exact date on which Taylor submitted her union
grievance in 2007.
[2]        Quattrocchi was subsequently replaced as principal by Gary Fairweather in September 2010.
Quattrocchi is Caucasian; Fairweather is African-American.  Am. Compl. ¶ 39.

rating unless she attended an optional workshop that summer. *Id.* Taylor received another "U" rating at the end of the 2009-10 school year.[3] *Id.*

At the start of the 2009-10 school year, Taylor was not assigned a classroom. *Id.* ¶ 15. Instead, she was "compelled . . . to sit in the teachers' lounge," where she shared a storage cart for her supplies and teaching materials with another teacher. *Id.* ¶ 16. This situation persisted through the 2010-11 and 2011-12 school years. *Id.* ¶ 15. As a result, staff and students at PS 43 refer to Taylor as "the teacher who works in the teachers' lounge." *Id.*

During the 2009-10 school year, Taylor was partnered with Eleanor Aguirie, who is Caucasian, to teach Science classes as part of the Collaborative Teaching Team. *Id.* ¶ 18. Taylor has a Master's degree in teaching reading; Aguirie is licensed to teach science. *Id.* ¶¶ 18, 20. As partners, Taylor and Aguirie "oftentimes taught the same science lessons." [4] *Id.* ¶ 36. Aguirie was permitted keys to the science lab, allowing her access to relevant educational tools and preparation materials. *Id.* ¶ 20. Taylor requested, but was denied, keys to the same science lab. *Id.* Taylor received unfavorable classroom evaluations as a result of her inability to utilize "demonstrative materials from the science lab." *Id.* ¶ 21. Throughout the school year, Taylor received unsatisfactory "U" evaluations of her lessons, whereas Aguirie received satisfactory "S" evaluations.[5] *Id.* ¶ 36. At the end of the 2009-10 school year, Taylor received a "U" rating whereas Aguirie received a "S" rating. *Id.* ¶ 19. Aguirie requested to "return to the general

---

[3]　　Taylor's original complaint stated the history somewhat differently: "U" rating for 2007-08, "S" rating for 2009-10 (that Quattrocchi threatened to convert to a "U"), and "U" rating for 2010-11. Compl. ¶¶ 19, 21, 24. That complaint was confusingly drafted but Taylor's counsel clarified the dates set forth in the text at oral argument.

[4]　　While stating that Taylor and Aguirie "oftentimes taught the same science lessons," the amended complaint does not explain whether they co-taught these classes or simply taught the same lesson plan to different classes. At oral argument, Taylor's counsel clarified that Taylor and Aguirie co-taught these classes.

[5]　　Teachers are evaluated throughout the school year and can receive a "U" or "S" evaluation of their classroom performance. They receive a "U" or "S" rating at the end of each year on the basis of these evaluations and other factors.

classroom fulltime" for the 2010-11 school year.[6]  *Id.* ¶ 37.  PS 43 granted her request, while denying the same request by Taylor.  *Id.*

In December 2009, then-Principal Quattrocchi yelled at Taylor in the presence of her union representative.  *Id.* ¶ 27.  Quattrocchi informed Taylor that she "just did not fit in as a teacher at PS 43."  *Id.*  Quattrocchi advised Taylor to leave PS 43 and warned her that if she chose to remain at the school, "things would be extremely bad" for her when she returned for the spring semester.  *Id.*  The union representative requested that Quattrocchi reverse Taylor's "U" rating for the 2007-08 school year and Quattrocchi agreed to do so if Taylor applied to leave PS 43.  *Id.*

Taylor then applied for a transfer to PS 14 on Staten Island, where she presently resides.  *Id.* ¶ 28.  Taylor's interview with the Principal at PS 14 went well; the Principal informed her that she was a "sure in" for a teaching position in the 2010-11 school year.  *Id.*  In the spring of 2010, Taylor contacted Ms. Bae,[7] the Superintendent for District 27, to inform her of Quattrocchi's agreement to reverse Taylor's "U" rating, a necessary condition for Taylor's transfer to PS 14.  *Id.* ¶ 30.  Ms. Bae informed Taylor that a reversal of her "U" rating was a decision "solely up to . . . Quattrocchi and out of her jurisdiction to effectuate."  *Id.*

Quattrocchi did not reverse Taylor's "U" rating for the 2007-08 school year.  *Id.* ¶ 32.  He also communicated "damaging things" about Taylor to the Principal at PS 14.  *Id.*  As a result, Taylor was denied the teaching position at PS 14.  *Id.*  When Taylor asked the Principal at PS 14 about the transfer, the Principal informed her that "based on what was told to her by . . . Quattrocchi, [she] just could not take the risk of hiring [Taylor]."  *Id.*

---

[6]       The amended complaint does not explain what about Taylor and Aguirie's 2009-10 employment circumstances did not constitute "general classroom" responsibilities or what it means to "return to the general classroom fulltime."

[7]       The amended complaint does not provide Ms. Bae's full name.

On June 23, 2010, five days before the end of the school year, Quattrocchi cited Taylor for failing to have a hallway display of her students' work. *Id.* ¶ 35. No other teachers had hallway displays of their students' work and no other teachers were cited for failing to have such displays. *Id.*

As mentioned above, Taylor received a "U" rating at the end of the 2009-10 school year. *Id.* ¶ 34. As supporting documentation for the rating, Quattrocchi submitted an unfavorable evaluation Taylor had received on November 6, 2008. *Id.* On that day, Taylor was asked to cover a class for Ms. Mullings, a Caucasian teacher who was late for school. *Id.* Ms. Adler, another Caucasian teacher, had already placed Ms. Mullings' learning objective on the board.[8] *Id.* Taylor received a "U" evaluation for this class. *Id.* Neither Ms. Mullings nor Ms. Adler received "U" evaluations for the class. *Id.*

Taylor filed a charge with the New York State Division of Human Rights ("SDHR") on August 26, 2010. *Id.* ¶ 42. She filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 8, 2010. *Id.* ¶ 43.

In September 2010, Taylor received a warning from assistant principal Frank Farino to expect to receive another "U" rating at the end of the 2010-11 school year. *Id.* ¶ 40. Taylor's file contained documentation of a "pre-observation" evaluation of Taylor's classroom lesson on September 7, 2010, which was deemed unsatisfactory. *Id.* September 7, 2010 was the first day that teachers returned to school for the 2010-11 school year and teachers were attending workshops and cleaning classrooms that day. *Id.* Taylor received another "U" rating at the end of the 2010-11 school year. *Id.*

On April 27, 2011, the EEOC issued Taylor a right-to-sue letter. *Id.* ¶ 44.

---

[8]     The amended complaint provides neither Ms. Mullings's nor Ms. Adler's full names.

B.     *Procedural History*

Taylor filed the original complaint, naming as defendants the DOE and individual supervisors at PS 43, on July 26, 2011.  *See* Compl. (ECF No. 1).  On February 28, 2012, the DOE and assistant principals Maureen Abernethy, Donna Estro, and Gayle Holmes (collectively, the "City Defendants") filed a motion to dismiss the complaint.  *See* DOE Mot. Dismiss Compl. (ECF No. 14); *see also* DOE Mem. in Support (ECF No. 15).  On the same day, assistant principal Frank Farino and then-principal John Quattrocchi filed individual motions to dismiss in which they adopted the arguments of the City Defendants in full.  *See* Farino Mot. Dismiss Compl. (ECF No. 16); Quattrocchi Mot. Dismiss Compl. (ECF No. 17).  I heard oral argument on the motions on April 20, 2012.

On August 2, 2012, I issued an order granting the motions to dismiss but giving Taylor 30 days' leave to replead with greater factual assertions to support her claims under Title VII.  *Taylor v. New York City Department of Education*, No. 11-CV-3582, 2012 WL 3150388 (E.D.N.Y. Aug. 2, 2012).  That order dismissed with prejudice certain claims determined to be time-barred and the claims brought against individual defendants.  *Id.*

Taylor filed the amended complaint against the DOE on September 4, 2012.  Am. Compl. (ECF No. 28).  On October 5, 2012, the DOE filed the present motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.  Def. Mot. Dismiss Compl. (ECF No. 32); *see also* Def. Mem. in Support.

## DISCUSSION

A.     *The Standard of Review*

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, a court must accept all factual allegations in the complaint as true, and draw all

reasonable inferences in the plaintiff's favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  However, a court need not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  If a party does not "nudge[] [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."[9]  *Twombly*, 550 U.S. at 570.

B.    *The Timeliness of Taylor's Claims*

Before filing a Title VII claim, a plaintiff must first exhaust his or her administrative remedies by timely filing a charge with the EEOC or an equivalent state or city agency.  42 U.S.C. § 2000e–5(e); *see also Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (holding that exhaustion is not a jurisdictional prerequisite but an "essential" precondition to bringing a Title VII claim in federal court).  To be timely, the plaintiff must file her administrative complaint within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).  "Thus, only events that occurred during the 300-day period prior to filing [the charge] . . . are actionable under Title VII."  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

---

[9]      Taylor's counsel disputes this pleading standard by arguing that *Twombly* "was a big antitrust case" and *Iqbal* "was a case that involved a controversial Plaintiff and would have required a large amount of factual discovery if that case had proceeded."  Pl. Opp'n at 15-16.  But the Supreme Court has made clear that the "plausibility" pleading standard set forth in *Twombly* applies to civil cases generally.  *Iqbal*, 556 U.S. at 684 ("Though *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. That Rule in turn governs the pleading standard 'in all civil actions and proceedings in the United States district courts.' Our decision in *Twombly* expounded the pleading standard for 'all civil actions,' and it applies to antitrust and discrimination suits alike.") (citations omitted).

Taylor filed a complaint with the New York State Division of Human Rights on August 25, 2010.  Accordingly, the August 2, 2012 order held that all claims accruing prior to October 30, 2009 must be dismissed as time-barred because they occurred more than 300 days before Taylor filed her SDHR complaint.  *Taylor*, 2012 WL 3150388, at *5.  The DOE argues that Taylor has asserted claims in her amended complaint that accrued prior to October 30, 2009 and that those claims must be dismissed for failure to file a timely administrative complaint.  Def. Mem. in Support at 14.  In particular, the DOE contends the following claims must be dismissed: that Taylor received a "U" rating for the 2007-08 school year; that she received a "U" evaluation for a November 6, 2008 lesson; that then-Principal Quattrocchi threatened to convert her "S" rating for the 2008-09 school year into a "U" rating on June 26, 2009; that she was assigned to the teachers' lounge beginning in Fall 2009; and that she was not provided access to educational materials to teach Science classes during the 2009-10 school year.  *Id*.

Taylor contends that her receipt of a "U" rating for the 2007-08 school year and a "U" evaluation for a November 6, 2008 lesson are not claims, but facts alleged in support of timely claims.  Pl. Opp'n at 14.  Specifically, she argues that her receipt of a "U" rating for the 2007-08 school year was a fact stated in support of the claim that she was denied a transfer to another school.  *Id*.  Similarly, Taylor argues that her receipt of a "U" evaluation for a November 6, 2008 lesson was a fact stated in support of the claim that she received a "U" rating for the 2009-10 school year.  *Id*.  As for the claims that she was assigned to the teachers' lounge and denied access to education materials during the 2009-10 school year, Taylor argues that since both occurred "during" that school year, they are not time-barred.  *Id*.

1. *Background Evidence: The 2007-08 "U" Rating and the November 6, 2008 "U" Evaluation*

The Supreme Court has explained that the Title VII statutory term "'employment practice' generally refers to a discrete act or single occurrence that takes place at a particular point in time." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 628 (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-11 (2002)), *superseded on other grounds by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2.  A discrete discriminatory or retaliatory act "which is not made the basis for a timely charge is the legal equivalent of a[n] . . . act which occurred before the statute was passed." *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977).  But such an act "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *Id.*; *Morgan*, 536 U.S. at 112.

Taylor asserts that her receipt of a "U" rating for the 2007-08 school year is background evidence for her discrimination and retaliation claims regarding the denial of her transfer to another school, which accrued after October 30, 2009.  Similarly, she argues that her receipt of a "U" evaluation for a November 6, 2008 lesson is background evidence for her discrimination and retaliation claims regarding her receipt of a "U" rating for the 2009-10 school year, which also accrued after October 30, 2009.  Therefore, to the extent that Taylor relies on these "prior acts as background evidence" to support her timely claims, they may be considered in evaluating the sufficiency of those claims. *Morgan*, 536 U.S. at 113.

However, Taylor also raises her receipt of a "U" rating for the 2007-08 school year as a factual allegation in a section of the amended complaint alleging retaliation against her for complaining to the teachers' union in 2007.  Specifically, the amended complaint states that Taylor "has been retaliated against by the Defendant through its Principals and Assistant

Principals" and immediately cites, as an act of retaliation, the "U" rating for the 2007-08 school

year.  Am. Compl. ¶¶ 23-24.  In this context, her receipt of that "U" rating constitutes a discrete

retaliatory act, rather than merely background evidence for such an act.  Therefore, to the extent

that Taylor relies on this act as an element of her retaliation claim, it is dismissed as time-

barred.[10]  *See also Taylor*, 2012 WL 3150388, at *5.

> 2. *When Does an Alleged Discriminatory or Retaliatory Act Occur?: The 2009-
> 10 Assignment to the Teachers' Lounge and Denial of Access to Teaching
> Materials*

A discrete discriminatory or retaliatory act "takes place at a particular point in

time." *Ledbetter*, 550 U.S. at 628.  Specifically, each discrete act "'occurred' on the day that it

'happened.'" *Morgan*, 536 U.S. at 110.  Subsequent "effects alone cannot breathe life into prior,

uncharged [acts]; . . . such effects in themselves have 'no present legal consequences.'"

*Ledbetter*, 550 U.S. at 628 (quoting *Evans*, 550 U.S. at 558).  A plaintiff, therefore, "must file a

charge within [the limitations period] of the date of the act or lose the ability to recover for it."

*Morgan*, 536 U.S. at 110.

Here, the decision to assign Taylor to the teachers' lounge is the operative

moment when the alleged discriminatory and retaliatory act "occurred" or "happened."

Likewise, the decision to deny Taylor access to education materials to teach Science classes is

the operative moment when the alleged discriminatory and retaliatory act "occurred."  The

amended complaint does not provide a specific date on which Taylor was assigned to the

teachers' lounge, or on which she was denied access to education materials to teach Science.  But

at oral argument, Taylor's counsel clarified that these decisions occurred at the start of the 2009-

10 school year, which began prior to October 30, 2009.  Moreover, there is no allegation that

---

[10]    Quattrocchi's threat to convert Taylor's 2008-09 "S" rating to a "U" rating is also enumerated in this part of the amended complaint as an act of retaliation.  Accordingly, it is time-barred as well.  Taylor does not contend otherwise in her opposition to the motion.

these decisions were ever revisited. *See Ledbetter*, 550 U.S. at 628 ("[I]f an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed.").

Accordingly, Taylor's claims that she was assigned to the teachers' lounge and denied access to education materials to teach Science classes during the 2009-10 school year are time-barred.

C.    *The Sufficiency of the Timely Allegations*

Taylor's timely claims are as follows:  Taylor received "U" evaluations whereas Aguirie, a Causcasian teacher, received "S" evaluations for the same teaching lessons in the 2009-10 school year, Am. Compl. ¶ 36; she was denied a request to return to "the general classroom," whereas Aguirie, a Caucasian teacher, was granted the same request at the end of the 2009-10 school year, *id*. ¶ 37; she was cited for failing to have a hallway display of her students' work on June 23, 2010, *id*. ¶ 35; she was denied a transfer to a teaching position at PS 14 as a result of Quattrocchi's refusal to reverse her "U" rating for the 2007-08 school year and his damaging statements about her to the Principal at PS 14, *id*. ¶ 32; she received a "U" rating at the end of the 2009-10 school year, *id*. ¶ 34; she received a warning that she would receive a "U" rating at the end of the 2010-11 school year, *id*. ¶ 40; and she received a "U" rating at the end of the 2010-11 school year, *id*.

1.  *Discrimination*

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate that

(1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (citing *Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002)). On a motion to dismiss, a plaintiff need not plead all the facts necessary to establish a prima facie case, but must satisfy Fed.R.Civ.P. 8 by making "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (quoting Fed.R.Civ.P. 8(a)(2)); *see also Twombly*, 550 U.S. at 547 (explicitly affirming the *Swierkiewicz* pleading standard for employment discrimination cases).

The DOE does not dispute that Taylor belongs to a protected class or is qualified for her position. Rather, it contends that Taylor neither suffered an adverse employment action nor suffered such an action under circumstances giving rise to an inference of discriminatory intent. Def. Mem. in Support at 12-15.

a. *Adverse Employment Action*

The Second Circuit defines an adverse employment action as a "'materially adverse change' in the terms and conditions of employment." *Sanders v. New York City Human Resources Administration*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Richardson v. New York State Department of Correctional Service*, 180 F.3d 426, 446 (2d Cir. 1999)). For a change to be materially adverse, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Terry*, 336 F.3d at 138). Examples of such changes include "termination of employment, a demotion evidenced by decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities,

or other indices . . . unique to a particular situation." *Id*. (citation and internal quotation marks omitted).

My August 2, 2012 decision stated that Taylor's negative annual performance evaluations and the denial of her request to transfer to PS 14 "could potentially qualify as adverse employment actions." *Taylor*, 2012 WL 3150388, at *6. I declined to further analyze this prong of Taylor's discrimination claim in light of the clear insufficiency of the allegations in meeting the discriminatory intent prong. Accordingly, I dismissed the complaint but granted Taylor leave to replead by providing more factual detail with respect to her claims of discrimination. The amended complaint again relies, in part, on Taylor's receipt of negative annual performance evaluations and the denial of her request to transfer to PS 14. Even drawing all inferences in Taylor's favor, the amended complaint does not sufficiently plead facts permitting a plausible inference that these claims constitute adverse employment actions.

Negative performance evaluations or ratings may, "in some circumstances, constitute adverse employment action," *Lawrence v. Mehlman*, 389 F. App'x 54, 56 (2d Cir. 2010), but they must trigger negative consequences to the conditions of employment to qualify as such. *See, e.g.*, *Siddiqi v. New York City Health & Hospitals Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008) ("A negative employment evaluation, if accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss, may constitute an adverse employment action. However, negative evaluations, standing alone without any accompanying adverse results, are not cognizable.") (citations and internal quotation marks omitted); *Browne v. City University of New York*, 419 F. Supp. 2d 315, 333-34 (E.D.N.Y. 2005) ("A negative evaluation alone, absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss, does not constitute an adverse employment action.").

13

Taylor does not allege in the amended complaint that any negative tangible consequences have attached to her receipt of "U" ratings for the 2009-10 and 2010-11 school years.  Therefore, these incidents may not constitute adverse employment actions for purposes of Taylor's discrimination claim.[11]

A denial of a request for transfer may constitute an adverse employment action when, "for example, an employee is forced to move to or to stay in a unit with more cumbersome job responsibilities or lower compensation."  *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003).  But such a denial does not constitute an adverse employment action "if the terms, privileges, duration, or condition of a plaintiff's employment do not change."  *Id.*  Taylor alleges that her transfer to PS 14 would be "a tremendous benefit" in that her current commute "is approximately five (5) hours per day and costs approximately twenty-five ($25.00) dollars per week" whereas her commute to PS 14 would be "approximately twenty (20) minutes at no cost."  Am. Compl. ¶ 29.  While working closer to home would be more convenient for Taylor, she does not allege that the transfer would have offered her materially different terms and conditions of employment, such as more money, prestige, or authority.[12]  Thus, the denial of Taylor's request for transfer to PS 43 does not constitute an adverse employment action for purposes of Taylor's discrimination claim.

Taylor's remaining timely discrimination claim – that she was denied a request to return to "the general classroom" – also fails to constitute an adverse employment action.  A

---

[11]    The same conclusion can be drawn for Taylor's claims regarding her receipt of "U" evaluations for her Science lessons throughout the 2009-10 year, a citation for failing to display her students' work in the hallway, and the warning that she would receive a "U" evaluation at the end of the 2010-11 year.  *See, e.g., Honey v. County of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) ("[C]ourts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.").

[12]    The court notes that Taylor's transfer to her current position at PS 43 was originally catalyzed by convenience as "her family had moved to Far Rockaway," where PS 43 is located.  Am. Compl. ¶ 13.  The amended complaint states that Taylor currently resides in Staten Island, where PS 14 is located, but does not indicate when she moved to that location.  *Id.* ¶ 3.  Taylor's counsel could not provide this date at oral argument.

teaching assignment must be "materially less prestigious, materially less suited to [plaintiff's] skills and expertise, or materially less conducive to career advancement" in order to qualify as an adverse employment action.  *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 255 (E.D.N.Y. 2012) (quoting *Galabya v. New York City Board of Education*, 202 F.3d 636, 641 (2d Cir. 2000)) (internal quotation marks omitted); *see also Gordon v. New York City Board of Education*, 01-CV-9265, 2003 WL 169800, at *7 (S.D.N.Y. Jan. 23, 2003) ("In order for the Board's failure to provide [plaintiff] with her own classroom to constitute an adverse employment action, [plaintiff] must show that the lack of a permanent classroom was 'more disruptive than a mere inconvenience' and had a 'sufficiently deleterious' effect on her ability to perform her job responsibilities.") (quoting *Galabya*, 202 F.3d at 640).  Here, the amended complaint is entirely devoid of facts regarding how a transfer to "the general classroom" would change the nature of Taylor's teaching responsibilities or physical working environment.

Accordingly, Taylor's discrimination claims must be dismissed for failing to allege facts sufficient to raise a plausible inference that she suffered an adverse employment action.

### 2.  *Retaliation*

Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, an employee must demonstrate that (1) she participated in a protected activity known to defendant; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.

15

*See Terry*, 336 F.3d at 141 (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)).  As with a discrimination claim, a plaintiff is not required to plead facts sufficient to establish a prima facie case of Title VII retaliation in order to survive a motion to dismiss.  *See Williams v. New York City Housing Authority*, 458 F.3d 67, 72 (2d Cir. 2006) ("The *Swierkiewicz* holding applies with equal force to any claim, including retaliation claims . . . .").  Rather, "the ordinary rules for assessing the sufficiency of a complaint apply."  *Swierkiewicz*, 534 U.S. at 511.

The DOE contends that Taylor has failed to demonstrate that her union grievance amounts to protected activity.  Def. Mem. in Support at 13.  It further argues that Taylor has failed to allege a causal connection between her administrative complaints and subsequent allegedly retaliatory acts.  *Id*. at 16-17.

a.  *Protected Activity*

The Second Circuit defines "protected activity" as "action taken to protest or oppose statutorily prohibited discrimination."  *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).  My August 2, 2012 decision held that Taylor's union grievance and administrative complaints constituted protected activity and that, accordingly, the DOE was prohibited from taking any employment action disadvantaging Taylor as a result of these activities.  *Taylor*, 2012 WL 3150388, at *7.  The amended complaint again alleges that Taylor filed a grievance with her union in 2007 and administrative charges in August and September 2010 regarding discrimination in the workplace.[13]  Am. Compl. ¶¶ 1, 23-24, 40-43.  Therefore, these complaints constitute protected activity for purposes of Taylor's retaliation claim.

---

[13]     In her opposition papers, Taylor states that she "did not just file one grievance against the Defendant with [her] Union in the year 2007" but that she "filed approximately ten grievances from the Fall 2009 to Spring 2010 school year through the Fall 2010 to Spring 2011 school year."  Pl. Opp'n at 18.  These additional facts are not adequately alleged in the amended complaint.  At oral argument, Taylor's counsel suggested that the

b. *Adverse Employment Action*

The "standard for an adverse employment action in retaliation claims is

considerably broader than the standard for discrimination claims under Title VII." *Vaughn v.*

*City of New York*, No. 06-CV-6547, 2010 WL 2076926, at \*14 (E.D.N.Y. May 24, 2010) (citing

*Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)).  While a

discrimination claim must demonstrate adverse actions affecting the terms and conditions of

employment, a retaliation claim may be based on "employer actions that are likely to deter

victims of discrimination from complaining to the EEOC, the courts, and employers."  *White*,

548 U.S. at 68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).  The Second

Circuit has found that "negative evaluation letters, express accusations of lying, assignment of

lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance

forms, transfer from library to classroom teaching as an alleged demotion, and assignment to

classroom on fifth floor which aggravated teacher's physical disabilities" may qualify as adverse

employment actions for purposes of a retaliation claim.  *Zelnik v. Fashion Institute of*

*Technology*, 464 F.3d 217, 226 (2d Cir. 2006).

1) *The 2007 Union Grievance*

Taylor alleges several incidents in the amended complaint that potentially

constitute adverse employment actions taken in retaliation for her 2007 union grievance:  her

receipt of "U" evaluations for Science lessons during the 2009-10 school year, Am. Compl. ¶ 36;

the denial of her request to return to "the general classroom," *id.* ¶ 37; her receipt of a citation for

---

following language in ¶ 1 of the amended complaint described these subsequent grievances: "This action is brought
to obtain relief for retaliation for Plaintiff's complaints of racial discrimination in her workplace to her teachers'
union commencing in 2007 and *continuing throughout the years thereafter* . . . ." (emphasis added).  She further
stated that "most" of these subsequent grievances alleged racial discrimination but could not provide any specific
information as to the dates and content of any one of these grievances.  Accordingly, I cannot conclude that these
unspecified subsequent grievances constitute protected activity for purposes of Taylor's retaliation claim.

failing to have a hallway display of her students' work on June 23, 2010, *id*. ¶ 35; the denial of

her transfer to a teaching position at PS 14, *id*. ¶ 32; and her receipt of a "U" rating for the 2009-

10 school year.[14]

        The courts in this Circuit have held that "negative performance reviews, standing

alone, can be considered an adverse employment action" for purposes of a retaliation claim.

*Siddiqi*, 572 F. Supp. 2d at 363; *see also Zelnik*, 464 F.3d at 226 (finding "negative evaluation

letters" to constitute adverse employment action in the context of a retaliation claim).  However,

they have generally declined to extend that holding to include "[r]eprimands, threats of

disciplinary action, and excessive scrutiny."  *Lucenti v. Potter*, 432 F. Supp. 2d 347, 364

(S.D.N.Y. 2006); *Gentile v. Potter*, 509 F. Supp. 2d 221, 242 (E.D.N.Y. 2007).  Therefore,

Taylor's receipt of "U" evaluations for Science lessons during the 2009-10 school year as well as

a "U" rating at the end of that school year constitute adverse employment actions for purposes of

her retaliation claim.  Her citation for failing to have a hallway display of her students' work

does not, however, amount to an adverse employment action.

        Even under the more forgiving standard for retaliation claims, the denial of

Taylor's transfer to PS 14 fails to constitute an adverse employment action.[15]  As discussed in

the context of Taylor's discrimination claim, she alleges only that this transfer would prove more

convenient with respect to her commute, not that it would alter any of the conditions of her

employment.  The courts in this Circuit have generally declined to find that transfers (or denials

of transfers) amount to adverse employment actions, even in the context of a retaliation claim,

---

[14]    Other incidents that might otherwise have potentially constituted adverse employment actions taken in retaliation for Taylor's union grievance are time-barred: her assignment to the teachers' lounge beginning in Fall 2009 and the denial of access to educational materials to teach Science classes during the 2009-10 school year.

[15]    The denial of Taylor's request to return to "the general classroom" does not constitute an adverse employment action for the same reason articulated in the discussion of her discrimination claim.  The amended complaint is entirely devoid of facts regarding how a transfer to "the general classroom" would change the nature of Taylor's teaching responsibilities or physical working environment.  Therefore, I cannot determine that this denial amounts to an adverse employment action even in the context of a retaliation claim.

where the action results merely in "an inconvenience, such as an increased commute or unfavorable hours." *Antonmarchi v. Consolidated Edison Co. of New York, Inc.*, 03-CV-7735, 2008 WL 4444609, at *15 (S.D.N.Y. Sept. 29, 2008); *Cruz v. Liberatore*, 582 F. Supp. 2d 508, 523 (S.D.N.Y. 2008) ("Were [plaintiff]'s retaliation claim predicated solely on his change of schedule, he would face a difficult, if not Sisyphean, task."); *cf. Cayemittes v. City of New York Dept. of Housing Preservation and Development*, 10-CV-8486, 2011 WL 7178736, at *8 (S.D.N.Y. Nov. 10, 2011) ("Plaintiff's transfer . . . which *he contends was a demotion*, is, at least facially, a sufficiently adverse action that would dissuade a reasonable employee from exercising his right to protest discrimination.") (citing *Kessler v. Westchester County Department of Social Services*, 461 F.3d 199, 206 (2d Cir. 2006)).

Accordingly, Taylor's receipt of "U" evaluations for Science lessons during the 2009-10 school year and the "U" rating at the end of that school year constitute the only adverse employment actions allegedly taken in retaliation for her union grievance.

2)   *The August and September 2010 Administrative Complaints*

Taylor alleges two incidents in the amended complaint that potentially constitute adverse employment actions taken in retaliation for her August and September 2010 administrative complaints of discrimination.[16]  First, she received a warning that she would receive a "U" rating at the end of the 2010-11 school year in September 2010.  Am. Compl. ¶ 40. Second, she received a "U" rating at the conclusion of the 2010-11 school year.  *Id*.  As discussed above, the courts in this Circuit have held that negative performance reviews, by

---

[16]        I decline to consider whether Taylor's receipt of an unsatisfactory evaluation for a "pre-observation of [a] classroom lesson" constitutes an adverse employment action for purposes of the retaliation claim. Am. Compl. ¶ 40.  At oral argument, Taylor's counsel admitted that Taylor was not aware of this evaluation until this lawsuit was filed.  For obvious reasons, a plaintiff cannot be deterred from complaining about discrimination if she has no knowledge that her employer has retaliated against her.

themselves, amount to adverse employment actions for purposes of a retaliation claim. But they have generally declined to find that threats to demote the plaintiff or take disciplinary action constitute an adverse employment action, even for purposes of a retaliation claim. *See, e.g.*, *Durkin v. Verizon New York, Inc.*, 678 F. Supp. 2d 124, 139 (S.D.N.Y. 2009) ("The threat to demote Plaintiff to her former title and salary . . . does not itself constitute an adverse employment action . . . and therefore cannot support Plaintiff's claims of retaliation."); *Lucenti*, 432 F. Supp. 2d at 364 ("Reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions."). Therefore, Taylor's receipt of a "U" rating at the end of the 2010-11 school year, but not the threat of such a rating, constitutes the sole adverse employment action allegedly taken in retaliation for her administrative complaints.

> c. *Causal Connection between Protected Activity and Adverse Employment Action*

A plaintiff may establish a causal connection between her protected activity and an adverse employment action either (1) "indirectly, by showing that the protected activity was followed closely by discriminatory treatment" or by evidence of disparate treatment of similarly situated employees, or (2) "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*, 232 F.3d at 117. Taylor fails to allege any retaliatory animus on the part of the DOE or that the DOE engaged in disparate treatment of similarly situated teachers. Therefore, her retaliation claims rest on whether there was close temporal proximity between (1) her filing of the union grievance and her receipt of "U" evaluations during the 2009-10 school year and a "U" rating at the end of that school year and (2) her filing of administrative complaints and her receipt of a "U" rating for the 2010-11 school year.

Generally, the cases that "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of

causality . . . uniformly hold that the temporal proximity must be 'very close.'" *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) (defining "causal connection" in context of motion for summary judgment); *see also Altieri v. Albany Public Library*, 172 Fed. App'x 331, 333 (2d Cir. 2006) (applying *Breeden*'s standard for "causal connection" to motion to dismiss). The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Gormon-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases). Nevertheless, the interval between a protected activity and an adverse employment action that results in a plausible inference of retaliation is generally no longer than several months. *See Ashok v. Barnhart*, 289 F. Supp. 2d 305, 314 (E.D.N.Y. 2003) (collecting cases).

1) *The 2007 Union Grievance*

The two-to-three year interval between Taylor's union grievance in 2007 and her receipt of "U" evaluations during the 2009-10 school year and a "U" rating at the end of that school year is too long to support a plausible inference of causal connection. Even taking into account the entire sequence of allegedly retaliatory acts that the defendant engaged in following Taylor's union grievance, the first such act was too temporally attenuated to satisfy the standard for causal connection. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005) (finding lower court erred by not considering "events that occurred" before the time bar as "relevant background evidence" in assessing whether there was a causal connection). The amended complaint cites Taylor's receipt of a "U" rating at the end of the 2007-08 school year as the first alleged incident of retaliation following her submission of the union grievance. Am. Compl. ¶ 24. Even assuming that Taylor filed her grievance in December 2007, the interval between that filing and the receipt of a "U" rating is approximately six months. This interval, in

and of itself, is too long to support a plausible inference of causal connection.  Therefore, Taylor

has failed to sufficiently allege a plausible claim of retaliation for her union grievance.

2)   *The August and September 2010 Administrative Complaints*

Taylor received a "U" rating at the conclusion of the 2010-11 school year,

approximately ten months following her administrative complaints of discrimination to the

SDHR and EEOC.  This interval is similarly too prolonged to permit a plausible inference of

causal connection.  Accordingly, Taylor has failed to sufficiently allege a plausible claim of

retaliation for her administrative complaints.

CONCLUSION

For the foregoing reasons, the DOE's motion to dismiss Taylor's amended

complaint is granted and the Clerk is directed to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated:  November 30, 2012
        Brooklyn, New York